UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CHRISTIAN KILLORAN, TERRIE
KILLORAN *individually and on behalf of their
son*, A.K.— *a minor*,

                Plaintiffs,

           -against-

WESTHAMPTON BEACH UFSD, MICHAEL
RADDAY – *Superintendent*, SUZANNE M.
MENSCH, JAMES N. HULME, HALSEY C.
STEVENS, JOYCE L. DONNESON, GEORGE
R. KAST – *As Board of Education Members*,

                Defendants.
-----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

19-cv-3298 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated June 5, 2019, Christian Killoran ("C. Killoran") and

Terrie Killoran ("T. Killoran" and together with C. Killoran, "Plaintiffs"), proceeding

*pro se*, commenced this action, on behalf of their son, A.K., against Defendants

Westhampton Beach UFSD ("Westhampton"), Michael Radday ("Radday"), Suzanne

M. Mensch ("Mensch"), James N. Hulme ("Hulme"), Halsey C. Stevens ("Stevens"),

Joyce L. Donneson ("Donneson") and George R. Kast ("Kast," and collectively with

Radday, Mensch, Hulme, Stevens and Donneson, the "Individual Defendants") (the

Individual Defendants together with Westhampton, "Defendants") alleging violations

of A.K.'s civil rights under:   (i) the Individuals with Disabilities Education

Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.; (ii) Title II of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12101 *et seq*.; (iii) Section 504 of the Rehabilitation Act of

1

1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq*.; and (iv) 42 U.S.C. § 1983 ("Section 1983"). *See* Complaint ("Compl."), Docket Entry ("DE") [1]. Presently before the Court, on referral from the Honorable Joanna Seybert for Report and Recommendation, is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *See* DE [16]. For the reasons set forth below, the Court respectfully recommends that Defendants' motion be denied on Fed. R. Civ. P. 12(b)(1) grounds but granted under Fed. R. Civ. P. 12(c).

## I.    BACKGROUND

Unless otherwise indicated, the facts set forth herein are taken from the Complaint, as well as documents attached to it as exhibits, and are accepted as true for purposes of the instant motion.[1]    This action is one in a series of civil rights

---

[1] In considering a motion to dismiss, courts consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks and citation omitted). A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Id*. (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Here, on the same day that Plaintiffs filed the Complaint, they also filed a separate document consisting of: (i) a memorandum of law; (ii) an April 17, 2019 decision issued by State Review Officer ("SRO") Sarah L. Harrington; (iii) an undated "Request for Review" submitted by C. Killoran to review the decision of Impartial Hearing Officer ("IHO") Nancy Murphy; and (iv) a March 11, 2019 Memorandum of Law submitted by C. Killoran to the New York State Department of Education State Review Office in support of his petition to overturn a decision rendered by IHO Leah Murphy. *See* Plaintiff[s]' Combined Affirmation and Memoranda of Law in Support of Plaintiffs' Complaint ("Pl. Memo in Support of Compl."), DE [3]. Although this document was not an exhibit "attached to" the Complaint, the Court considers it as such. Initially, it was filed on the same date as the Complaint, and Plaintiffs ask the Court to "incorporate by reference the facts and arguments" set forth within. *See, e.g.*, Pl. Memo in Support of Compl., 7. Moreover, Defendants raise no arguments as to why the Court should not consider the Plaintiffs' submission as an exhibit attached to the Complaint. Accordingly, bearing in mind both Fed. R. Civ. P. 10(c) and the interest of judicial economy, the Court considers Plaintiffs' submissions as part of the Complaint.

The Court will also consider the exhibits that Plaintiffs submitted in opposition to the instant motion. *See* DEs [17-1]-[17-3]. Plaintiffs submitted three exhibits, two of which they had already

litigations brought against Westhampton and related parties concerning the education of Plaintiffs' son, A.K., who has Down Syndrome (the "Related Lawsuits").[2] *See* Compl. ¶¶ 12-13.  The instant lawsuit arises out of Defendants' conduct during the 2018-2019 academic year.  *Id.* at ¶ 16; *see also* Pl. Memo in Support of Compl., 5.[3]

In March, April and May of 2018, Westhampton convened a Committee on Special Education ("CSE") to develop an Individualized Education Plan ("IEP") for A.K. for the 2018-2019 academic year.  *See* Pl. Memo in Support of Compl., 33, 33 n.3 (April 17, 2019 Decision by SRO Harrington); *see also* Compl. ¶¶ 18-19.  The May 2018 CSE found that A.K. "remained eligible for special education and related services as a student with an intellectual disability[]" and recommended a 12-month school year program, which included, *inter alia*, speech-language therapy, physical therapy, occupational therapy, the services of an individual aide, a "12:1[:1] special class placement to focus on functional academics and vocational skills," strategies to address A.K.'s management needs and assistive technology devices.  *See* Pl. Memo in Support of Compl., 33-34 (April 17, 2019 Decision by SRO Harrington).  The May

---

submitted in conjunction with the Complaint, so the Court need not consider their propriety.  The third exhibit, which Plaintiffs submit for the first time in opposition to the instant motion, is an August 3, 2018 Interim Order issued by IHO Leah Murphy.  Courts "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment."  *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (internal quotation marks and citations omitted); *see also Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings[.]").  Accordingly, the Court considers this exhibit as well.

[2] *See* Related Matters:  15-4743, 17-cv-866, 17-cv-3553, 18-cv-3389, 19-cv-2418, 19-cv-5078, 19-cv-6663 and 20-cv-269.

[3] Because the pages in this 125-page document are not sequentially numbered, the Court's citations are to the page numbers that appear in the Portable Document Format ("PDF") bar when the document is opened in ECF.

2018 CSE further recommended that A.K. attend an out-of-district public school, just as prior CSEs had done. *See id.*

Based on the "actions, decisions, and educational philosophies espoused by" Westhampton, Plaintiffs filed two due process complaints—one in March 2018 and another in June 2018—with the New York City Department of Education pursuant to the IDEA,[4] alleging that Westhampton had failed to provide A.K. with a "free and appropriate education" ("FAPE") as required by the IDEA. Compl. ¶¶ 20-22; Pl. Memo in Support of Compl., 34 (April 17, 2019 Decision by SRO Harrington); DE [17-3], 1 (August 3, 2018 Interim Order by IHO Murphy). These complaints were consolidated into one action. DE [17-3], 1-2 (August 3, 2018 Interim Order by IHO Murphy). Plaintiffs alleged that Westhampton had failed to "conduct a meaningful analysis regarding whether it could employ its special education resources toward addressing the unique and individualized needs of A.K." and had failed to develop an IEP that was "appropriately ambitious[.]" Compl. ¶¶ 21-22; Pl. Memo in Support of Compl., 34 (April 17, 2019 Decision by SRO Harrington) ("Overall, the allegations focused on [Westhampton's] failure to conduct a 'meaningful analysis' of its obligation and capacity to educate the student in the least restrictive environment . . . and more specifically, within [Westhampton] itself[.]"). Plaintiffs further alleged that "it remained inherently impossible for Westhampton to facilitate an IEP designed to facilitate a FAPE that was 'appropriately ambitious'" because Westhampton: (i) "had

---

[4] Under the IDEA, if parents disagree with the CSE's IEP, they must first file a due process complaint. *See* 20 U.S.C. § 1415 (b)(6)(A); *C.F. ex rel. R.F. v. New York City Dep't of Educ.*, 746 F.3d 68, 73 (2d Cir. 2014) (citation omitted).

affirmatively denied A.K. access to the general education curriculum[]"; (ii) "had not aligned A.K.'s academic goals with grade-level learning standards[]"; (iii) had not developed A.K.'s present levels of performance ("PLEPS") based off the results of "alternate assessment" state tests; (iv) "had not recommended an IEP program and placement recommendation predicated upon peer-based research[]"; (v) had recommended an out-of-district educational program that did not provide students like A.K. with "access to the general education curriculum, did not align its student[s'] goals with grade level learning standards, and did not utilize appropriate state assessment in the development of PLEPS[]"; and (vi) had recommended an out-of-district educational program that "was not in the least restrictive learning environment[.]" Compl. ¶¶ 23-28.

A due process hearing was held before IHO Leah Murphy on August 1 and 2, 2018. *Id.* at ¶ 30; DE [17-3], 2 (August 3, 2018 Interim Order by IHO Murphy). On February 20, 2019, IHO Murphy issued a decision in favor of Westhampton finding that it had offered A.K. a FAPE in the least restrictive environment for the 2018-2019 school year. Pl. Memo in Support of Compl., 40 (April 17, 2019 Decision by SRO Harrington) (discussing IHO Murphy's decision). Accordingly, Plaintiffs administratively appealed. Compl. ¶ 31. On April 17, 2019, SRO Sarah Harrington issued a decision (the "SRO Decision") dismissing with prejudice Plaintiffs' appeal on two grounds: (1) for Plaintiffs' "failure to comply with the practice regulations governing appeals to the Office of State Review[]"; and (2) upon finding that IHO

Murphy's decision was supported by the evidence.  Pl. Memo in Support of Compl., 80 (April 17, 2019 Decision by SRO Harrington); Compl. ¶ 34.

Plaintiffs commenced this action to review the SRO Decision, pursuant to the IDEA, which provides that an SRO's final decision may be challenged in federal court. *See* Compl. ¶ 35; *see also* 20 U.S.C. § 1415(i)(2).  Additionally, Plaintiffs assert claims under the ADA, Rehabilitation Act and Section 1983.

With respect to the ADA and Rehabilitation Act claims, Plaintiffs allege that: (i) Defendants have "pre-determined" the educational program and placement for A.K.; (ii) Westhampton has "discriminatorily failed to enact reasonable accommodations and/or modifications that would allow A.K. to be educated in Westhampton, to which he is legally entitled[]"; (iii) Westhampton "has failed to modify its practice of allocating and utilizing its special education resources towards addressing the needs of post-elementary aged 'alternately assessed special education' children, such as A.K."; (iv) Westhampton "acted in a retaliatory manner" against Plaintiffs, in response to their commencement of the Related Lawsuits; and (v) Defendants "have conducted themselves in [a] willfully malicious manner, with a deliberate indifference towards the welfare of . . . [P]laintiffs." *Id.* at ¶¶ 36-45.  As to their Section 1983 claims, Plaintiffs allege that they "should be afforded protection by [Section] 1983[]" because A.K. "is being treated in a particularly unique discriminatory fashion, due to the actions that he has commenced against . . . [D]efendants." *Id.* at ¶¶ 46, 50.  Plaintiffs seek compensatory and punitive damages, as well as equitable relief, "including but not limited to, an order directing . . .

[D]efendants to employ [their] special education resources towards addressing the unique and individualized needs of . . . A.K., as well as an award for retroactive compensatory education." *Id.* at WHEREFORE Clause.

Defendants move to dismiss Plaintiffs' claims under the ADA, Rehabilitation Act and Section 1983 for lack of subject matter jurisdiction and for failure to state a claim. *See* Memorandum of Law in Support of Defendants' Motion for Partial Dismissal of the Complaint ("Def. Memo"), DE [16-1], 1, 4-21. With respect to Plaintiffs' IDEA claims, which challenge the SRO Decision,[5] Defendants move to dismiss only on subject matter jurisdiction grounds. *See* Reply Memorandum of Law in Further Support of Defendants' Motion for Partial Dismissal of the Complaint ("Def. Reply"), DE [18], 1-4.[6]

## II.    LEGAL STANDARDS

### A.    <u>Fed. R. Civ. P. 12(b)(1)</u>

Under Fed. R. Civ. P. 12(b)(1), a federal court must dismiss a claim when it lacks jurisdiction over the subject matter of the action. *See* Fed. R. Civ. P. 12(b)(1); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is

---

[5] The Court notes that Defendants erroneously refer to the April 17, 2019 SRO Decision as having been issued by SRO Krolak, *see* Def. Memo, 1, when in fact, this Decision, which Plaintiffs now appeal was issued by SRO Harrington. *See* Compl. ¶¶ 34-35; Pl. Memo in Support of Compl., 30-80 (April 17, 2019 Decision by SRO Harrington). Plaintiffs do not appeal the Decision rendered by SRO Krolak, which ordered Westhampton to convene CSE meetings regarding A.K.'s education for the 2018-2019 school year. *See* Compl. ¶ 18.

[6] Defendants raise their argument for dismissing the IDEA claims for the first time in their reply memorandum of law. Nonetheless, because a party may move to dismiss for lack of subject matter jurisdiction "at any time," the Court considers their argument. *See Islam v. Quarantillo*, 350 F. Supp. 3d 183, 185 (E.D.N.Y. 2018), *aff'd on other grounds*, 803 F. App'x 543 (2d Cir. 2020) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.") (internal quotation marks and citation omitted).

properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.") (citation omitted).  The party asserting subject matter jurisdiction has the burden to prove the court's jurisdiction by a preponderance of the evidence.  *See Vailette v. Lindsay*, No. 11-cv-3610, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014) (citations omitted).  In deciding a motion to dismiss for lack of subject matter jurisdiction, the court must assume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party.  *C.K. v. Bd. of Educ. of the Westhampton Beach Sch. Dist.*, 185 F. Supp. 3d 317, 324 (E.D.N.Y. 2016) (citations omitted).

### B. Fed. R. Civ. P. 12(c)

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard for addressing a Rule 12(c) motion mirrors that for a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013) (citation omitted).  To survive a motion to dismiss pursuant to either Rule 12(b)(6) or Rule 12(c), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1975 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (citation omitted). A Rule 12(c) motion should be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Dargahi v. Honda Lease Trust*, 370 F. App'x 172, 174 (2d Cir. 2010) (internal quotation marks and citation omitted); *Nathaniel v. City of N.Y.*, No. 16-cv-256, 2017 WL 3912986, at *1 (E.D.N.Y. Sept. 6, 2017) (citations omitted).

### C. *Pro Se* **Pleadings**

It is well-established that pleadings filed by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200 (2007) (internal quotation marks and citation omitted). Where, an attorney is proceeding *pro se*, however, his pleadings are not entitled to the "special consideration which the courts customarily grant to *pro se* parties." *Bazadier v. McAlary*, 464 F. App'x 11, 12 (2d Cir. 2012) (internal quotation marks and citation omitted).

C. Killoran is an attorney. *See* Electronic Order dated May 18, 2020 ("[T]he Court takes notice that Plaintiff, although proceeding *pro se*, is a registered attorney."). Accordingly, although Plaintiffs are proceeding *pro se*, their Complaint is held to the same standards as pleadings drafted by lawyers. *See Bazadier*, 464 F. App'x at 12.

## III.    DISCUSSION

### A.    Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

Defendants assert that the Court lacks subject matter jurisdiction over Plaintiffs' IDEA, ADA, Rehabilitation Act and Section 1983 claims because Plaintiffs have failed to exhaust their administrative remedies with respect to these claims, as required by the IDEA. *See* Def. Memo, 4-8. Contrary to Defendants' argument, which is premised on a fundamentally flawed understanding of the exhaustion requirement of the IDEA, Plaintiffs have exhausted their administrative remedies, and therefore the Court has subject matter jurisdiction over Plaintiffs' claims.

Pursuant to the IDEA, "parents of students with disabling conditions are guaranteed 'both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'" *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (quoting *Honig v. Doe*, 484 U.S. 305, 311-12, 108 S.Ct. 592, 598 (1988)). Parents are entitled to request a due process hearing regarding matters "relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education[]" by filing a "due process complaint." *Id.* (quoting 20 U.S.C. § 1415(b)(6)(A)); *C.F. ex rel. R.F.*, 746 F.3d at 73 (citing 20 U.S.C. § 1415(b)(7)(A)). New York employs a "two-tier administrative system for review of IEPs." *Cave*, 514 F.3d at 245. First, the parents and the school district participate in a "due process hearing" before an IHO. *C.F. ex rel. R.F.*, 746 F.3d at 73 (citing 20 U.S.C. § 1415(f)(1)). The IHO issues a written decision, which can then be appealed

to an SRO of the New York Education Department. *Cave*, 514 F.3d at 245 (citations omitted). After "exhaustion of these procedures[,]" the aggrieved party has the right to file a suit in federal or state court to review the SRO's decision. *Id.* (citing 20 U.S.C. § 1415 (i)(2)(A); *C.F. ex rel. R.F.*, 746 F.3d at 73 (citations omitted). A court lacks subject matter jurisdiction over IDEA claims where these administrative procedures have not been exhausted. *Cave*, 514 F.3d at 245 (citations omitted).

Initially, Defendants argue that the SRO Decision is "not final because Plaintiffs appealed it to this Court[.]" Def. Reply, 1. Thus, they contend, because this Court has not yet rendered a decision on Plaintiffs' IDEA claim challenging the SRO Decision, it does not have subject matter jurisdiction over Plaintiffs' IDEA and related ADA, Rehabilitation Act and Section 1983 claims. *See* Def. Memo, 7. In so arguing, Defendants appear to confuse the administrative exhaustion standard with the appellate review standard, by which Courts of Appeals have jurisdiction of appeals only over "final decisions" of the district courts. *See Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.*, 505 F.3d 226, 230 (2d Cir. 2007) (noting that Court of Appeals has "jurisdiction only over appeals from final decisions of the district court.") (citations omitted). To determine whether administrative procedures have been exhausted, the relevant inquiry is whether the SRO has rendered a final determination. *See M.A. v. New York Dep't of Educ.*, 1 F. Supp. 3d 125, 135 (S.D.N.Y. 2014) ("The SRO's determination is the final administrative decision and may be appealed to a state or federal court within four months of issuance of the decision.") (citing N.Y. Educ. Law § 4404(3)). A district court, by

definition, is not part of the administrative exhaustion process.  Defendants'
argument boils down to the following:  (1) the district court must issue a ruling on an
appeal of an SRO decision to render that decision final; *and* (2) the district court lacks
subject matter jurisdiction to issue such a ruling *until* the SRO decision is final.  This
argument lacks merit.

   The Court further rejects Defendants' argument that Plaintiffs have failed to
exhaust their administrative remedies because SRO Harrington based her dismissal
of Plaintiffs' appeal in part on their "failure to comply with practice regulations
governing appeals to an SRO."  *See* Def. Reply, 3-4.  SRO Harrington's dismissal was
based in part on Plaintiffs' failure to comply with "form requirements for pleadings[,]"
including, most notably, their failure to "set forth a clear and concise statement of the
issues presented for review[.]"  *See* Pl. Memo in Support of Compl., 57, 58-59 (citations
omitted).  Whereas courts in this Circuit have deemed plaintiffs' procedural errors,
"such as failure to timely serve or file a petition for SRO review[,]" a failure to exhaust
administrative remedies, procedural violations of "form requirements" do not
similarly constitute an exhaustion failure.  *See, e.g.*, *J.E. v. Chappaqua Cent. Sch.
Dist.*, No. 14-cv-3295, 2015 WL 4934535, at \*4 (S.D.N.Y. Aug. 17, 2015) (noting that
SRO "judgments rendered solely on the basis of easily corrected procedural errors or
mere technicalities[] are generally disfavored" and rejecting argument that plaintiffs
had failed to exhaust administrative remedies where the SRO had dismissed their
appeal for procedural violations of form requirements) (internal quotations marks
and citations omitted).

Here, there is no dispute that Plaintiffs: (1) filed a due process complaint; (2) participated in a due process hearing before an IHO; and (3) appealed the IHO's decision to an SRO. *See* Compl. ¶¶ 20, 30-35; Pl. Memo in Support of Compl., 31-80 (April 17, 2019 Decision of SRO Harrington); *see also* Def. Memo, 7 (recognizing that "Plaintiffs have timely filed an appeal in federal court of the decision of SRO Harrington"). There is therefore no dispute that Plaintiffs have exhausted administrative procedures with respect to their IDEA claims.

Plaintiffs' ADA, Rehabilitation Act and Section 1983 claims, which are subject to the IDEA's exhaustion requirement,[7] were similarly exhausted. Courts analyzing exhaustion of non-IDEA claims must consider what a plaintiff "would be required to do in IDEA processes if the action [had] been brought under [the IDEA]." *Robert F. v. N. Syracuse Cent. Sch. Dist.*, No. 518-cv-0594, 2019 WL 1173457, at *7 (N.D.N.Y. Mar. 13, 2019) (internal quotation marks and citation omitted). As set forth above, under the IDEA, a plaintiff must present a claim "detailing their FAPE denial." *Id.*

---

[7] Plaintiffs' arguments that the ADA, Rehabilitation Act and Section 1983 claims are not subject to the IDEA's exhaustion requirement are without merit. *See* Plaintiffs' Combined Affidavit and Memoranda of Law in Opposition to the Defendants' Motion to Dismiss ("Pl. Opp."), DE [17], 1-9. The non-IDEA claim exhaustion requirement is codified at 20 U.S.C. § 1415(*l*):

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

Thus, Plaintiffs must satisfy the IDEA's exhaustion requirement "whenever they assert claims for relief *available* under the IDEA, regardless of the statutory basis of their complaint." *Cave*, 514 F.3d at 246 (emphasis in original). In other words, where a plaintiff asserts a claim "related to the education of disabled children," whether that claim is brought under the IDEA or another statute—such as the ADA or Rehabilitation Act—it is subject to the IDEA's exhaustion requirement. *C.K.*, 185 F. Supp. 3d at 326 (internal quotation marks and citation omitted).

Here, Plaintiffs raised all of the issues relevant to A.K.'s FAPE and IEPs, thereby giving the IHO and SRO an opportunity to determine whether changes in A.K.'s educational program were needed to secure a FAPE. The fact that Plaintiffs did not explicitly cite the ADA, Rehabilitation Act or Section 1983 is of no consequence. The exhaustion requirement "furthers development of a complete factual record and promotes judicial efficiency." *Id.* (internal quotation marks and citation omitted). Thus, requiring a plaintiff to allege elements of related non-IDEA claims—such as the ADA and Rehabilitation Act—would distract hearing officers from their "statutorily mandated focus on the IDEA's FAPE requirement[,]" thereby undermining the IDEA administrative process. *Id.* (internal quotation marks, citations and alteration omitted) ("[N]othing in IDEA suggests that it enlists state agencies to develop a record on issues extraneous to FAPE, such as state-of-mind, for the sole benefit of federal courts in possible later litigation.").

Because Plaintiffs satisfied the IDEA's exhaustion requirement with respect to all of the claims currently before the Court, the Court has subject matter jurisdiction over these claims.

**B.** **Defendants' Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)**

Next, Defendants seek judgment on the pleadings on the grounds that Plaintiffs fail to state an ADA, Rehabilitation Act or Section 1983 claim. *See* Def. Memo, 9-21. Defendants do not seek judgment on the pleadings with respect to

Plaintiff's IDEA claims. *Id.* at 1.[8]  For the reasons set forth below, Defendants motion is granted.

> *i.    Title II of the ADA and Rehabilitation Act*

Initially, Defendants assert discrimination and retaliations claims pursuant to the ADA and Rehabilitation Act. *See* Compl. ¶¶ 36-45. The IDEA addresses "incorrect or erroneous special education treatments," while the ADA and Rehabilitation Act "address discrimination against disabled students." *A.K. v. Westhampton Beach School District*, No. 17-cv-866, 2019 WL 4736969, at *14 (E.D.N.Y. Sept. 27, 2019) (internal quotation marks and citation omitted).

The Court considers Plaintiffs' claims under the ADA and the Rehabilitation Act (the "Acts") together. Though there are minor differences between the ADA and the Rehabilitation Act, courts regularly analyze claims under both identically and simultaneously. *See, e.g.*, *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) ("[T]here are subtle differences between [the Acts] . . . [and] unless one of those subtle distinctions is pertinent to a particular case, we treat claims under those two statutes identically.") (internal quotation marks and citations omitted); *Garcia v.*

---

[8] To render a decision on Plaintiffs' IDEA claim, which is an appeal of the SRO Decision, the Court must review the administrative record. *See C.R. v. New York City Dep't of Educ.*, 211 F. Supp. 3d 583, 604 (S.D.N.Y. 2016) ("Upon an aggrieved party's appeal of the SRO's decision to the federal district court, the court must review the entirety of the administrative record in addition to supplemental evidence upon either party's request.") (citation omitted); 20 U.S.C. § 1415(i)(2)(C)(i) (noting that in appeals to federal court, the court "shall receive the records of the administrative proceedings"). Due to the COVID-19 health crisis, the New York State Education Department has been unable to process Plaintiffs' request for the administrative record. *See* Electronic Order dated May 18, 2020; DE [24] (Defendants' June 8, 2020 letter to Judge Seybert). Judge Seybert issued an Order on May 18, 2020 directing the parties to advise how the delay in receiving the administrative record would impact the Court's decision of the Defendants' motion. Defendants filled a letter on June 8, 2020, in which they explained that the administrative record had no bearing on their pending motion because their motion was only with respect to Plaintiffs' non-IDEA claims. *See* DE [24] (Defendants' June 8, 2020 letter to Judge Seybert).

*S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001) (noting that Rehabilitation Act and ADA "offer essentially the same protections for people with disabilities") (citations omitted).   Because the differences between these "nearly identical" statues, *see McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012), are not at issue here, the Court considers Plaintiffs' claims under each statute together.   *See Cercpac v. Health & Hosps. Corp.*, 147 F.3d 165, 167 (2d Cir. 1998) ("Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded . . . entities, [the Acts] purport to impose precisely the same requirements.   [When] neither difference affects the disposition of [a dispute], [courts] need not consider the statutes separately.").

   a.   Discrimination Claim

Plaintiffs bring discrimination claims under the Acts premised on A.K.'s deprivation of a FAPE.   To make out a *prima facie* case of discrimination under the Acts, a plaintiff must show that:   (1) he "is a qualified individual with a disability"; (2) "defendants are subject to one of the Acts"; and (3) he "was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability." *Harris v. Mills*, 572 F.3d 66, 73-74 (2d Cir. 2009) (citation omitted).   This third element is satisfied where a plaintiff plausibly pleads "failure to make reasonable accommodation[]" to the known limitations of an individual with a disability.   *M.M. v. New York City Dep't of Educ.*, No. 15-cv-5846, 2017 WL 1194685, at *13 (S.D.N.Y. Mar. 30, 2017) (internal quotation marks and citation omitted); *Doe v. U.S. Sec'y of*

*Transp.*, No. 17-cv-7868, 2018 WL 6411277, at *7 (S.D.N.Y. Dec. 4, 2018), *appeal withdrawn*, No. 19-55, 2019 WL 1531763 (2d Cir. Feb. 25, 2019) (quoting 42 U.S.C. § 12112(b)(5)(A)).   To plead failure to accommodate, a plaintiff must allege "the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

Here,  the parties do not dispute that A.K. is disabled under the terms of the Acts or that Westhampton is covered by these statutes.  The only question is whether A.K. was denied the opportunity to benefit from Defendants' services because of his disability.  Plaintiffs are proceeding on a failure to accommodate theory, alleging that Defendants:  (i) "pre-determined" the educational program and placement for A.K.; (ii) failed to enact reasonable accommodations and/or modifications that would allow A.K. to be educated in Westhampton and receive a FAPE; and (iii) failed to utilize its special education resources towards addressing the needs of special education children, like A.K.  Compl. ¶¶ 36-39, 42-44; *see also* Pl. Memo in Support of Compl., 24-25.

Plaintiffs fail to allege any supporting facts to show how Defendants pre-determined A.K.'s placement or what reasonable modifications Westhampton should make to allow A.K. to be educated there.  Nonetheless, the Court considers the evidence submitted with the Complaint, as well as the IHO and SRO decisions submitted with the Complaint and in opposition to the instant motion, of which the

Court takes judicial notice.[9]  Based on a review of this evidence, the Court determines that Plaintiffs seek to have Westhampton implement a "hybrid program," which would allow A.K. to be educated at Westhampton in "a 12:1:1 special class."  *See* Pl. Memo in Support of Compl., 76-77 (April 17, 2019 Decision by SRO Harrington) (discussing Plaintiffs' "preferred 'hybrid program'"); *id.* at 83-84 (Request for Review). Thus, Plaintiffs are demanding "additional or different substantive benefits[,]" which unlike a "demand for reasonable accommodations to ensure access to an existing program" is not cognizable.  *See M.M.*, 2017 WL 1194685, at *13 (internal quotation marks and citations omitted).

As set forth above, Defendants have implemented an IEP for A.K., and A.K. has been afforded access to an existing out-of-district program.  *See* Pl. Memo in Support of Compl., 33-34 (discussing CSE's development of IEP for 2018-2019 school year).  Neither the ADA nor the Rehabilitation Act require a school "to provide students with disabilities with potential-maximizing education," but rather "only reasonable accommodations that give those students the same access to the benefits of a public education as all other students."  *Dzugas-Smith v. Southold Union Free Sch. Dist.*, No. 08-cv-1319, 2012 WL 1655540, at *17 (E.D.N.Y. May 9, 2012) (internal quotation marks and citation omitted).  Accordingly, Plaintiffs' claims under the Acts must fail.  *See Streck v. Bd. of Educ. of E. Greenbush Sch. Dist.*, 280 F. App'x 66, 68

---

[9] As set forth above, the submissions the Court considers are:  (i) Plaintiffs' Memorandum of Law in Support of the Complaint; (ii) Plaintiffs' undated Request for Review and undated Memorandum of Law in support of their appeal of IHO Murphy's Decision; (iii) the SRO Decision; and (iv) an August 3, 2018 Interim Order issued by IHO Murphy.  *See* Pl. Memo in Support of Compl.; DEs [17-1]-[17-3].  With respect to Plaintiffs' Request for Review in support of their appeal of IHO Murphy's Decision, the Court understands Plaintiffs' reference to IHO "Nancy" Murphy to be a typographical error, as every other reference to IHO Murphy, including the SRO Decision, is to IHO "Leah" Murphy.

(2d Cir. 2008) (Summary Order) (affirming district court's dismissal of ADA and Rehabilitation Act claims where an IEP had been created and implemented for plaintiff, but he sought "additional or different substantive benefits"); *Dzugas*, 2012 WL 1655540, at *7-8, 17 (where school had implemented an IEP, plaintiff's request to attend summer program at a different school than defendant school was not cognizable under the Acts because it was a request for "additional or different substantive benefits").

### b. Retaliation Claim

Plaintiffs further allege that Westhampton "acted in a retaliatory manner" against Plaintiffs, in response to their commencement of the Related Lawsuits. *See* Compl. ¶ 40. A plaintiff seeking to state a claim for retaliation under the Acts must show that: (i) he was engaged in protected activity; (ii) the purported retaliator knew of plaintiff's involvement in the protected activity; (iii) an adverse action was taken against plaintiff; and (iv) there exists a causal connection between the protected activity and the adverse action. *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 226 (E.D.N.Y. 2018) (addressing retaliation in the public services context) (citations omitted).[10]

---

[10] Although Title II of the ADA does not contain its own statutory proscription against retaliation, Title V's general anti-retaliation provision contemplates such protections. *See Volpe v. New York City Dep't of Educ.*, 195 F. Supp. 3d 582, 592 (S.D.N.Y. 2016) ("[42 U.S.C. § 12203], which appears in Title V of the ADA, prohibits retaliatory discrimination against an individual who has opposed any act or practice which the ADA makes unlawful.") (citing 42 U.S.C. § 12203(a)); *see also Warren v. Goord*, No. 99-cv-296, 2006 WL 1582385, at *17 (W.D.N.Y. May 26, 2006) ("[Title II] ADA retaliation claims . . . are governed by Title V[.]"), *aff'd*, No. 06-3349, 2008 WL 5077004 (2d Cir. Nov. 26, 2008). Moreover, federal regulations prohibit retaliation in connection with claims brought pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act. *See* 28 C.F.R. § 35.134(a) ("No . . . public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified,

Here, there is no disagreement as to whether the Related Lawsuits constitute protected activity about which Westhampton, who is a defendant in each one, knew. *See Dotson v. City of Syracuse*, 688 F. App'x 69, 73 (2d Cir. 2017) (filing of lawsuit is protected activity). While Plaintiffs do not allege in their Complaint what adverse actions Westhampton took against A.K., the Court nonetheless considers the purportedly adverse actions Plaintiffs raise in their submissions filed in conjunction with the Complaint. *See* Pl. Memo in Support of Compl. According to Plaintiffs, Westhampton refused to: (i) "meaningfully analyze whether the application of [its] special education resources are capable of addressing the unique and individualized needs of . . . A.K."; (ii) "provide . . . A.K.[] with the general education curriculum"; (iii) "align . . . A.K.'s[] academic goals with grade-level learning standards"; (iv) "utilize appropriate state assessments for purposes of developing . . . A.K.'s PLEPS"; (v) "utilize any peer-based research to develop . . . A.K.'s IEP"; (vi) "consider the educational program and placement of . . . A.K. within the [least restrictive environment]"; (vii) "allow . . . A.K.[] to be incorporated into lunch and electives, pending the outcome of the litigation"; and (viii) "allow . . . A.K.[] to . . . serve as a volunteer within [Westhampton's] summer recreational program[.]" Pl. Memo in Support of Compl. 26-27.

Plaintiffs fail, however, to allege a causal connection between the Related Lawsuits and these adverse actions. A plaintiff alleging retaliation may establish a

---

assisted, or participated in any manner in an investigation, proceeding, or hearing under the [ADA] or this part."); 34 C.F.R. § 104.61 (incorporating the anti-retaliation provisions of Title VI of the Civil Rights Act of 1964 to the Rehabilitation Act).

causal connection either:  "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (internal quotation marks and citation omitted).  Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554 (2d Cir. 2001) (citations omitted), courts have held that a gap of more than a two to three months defeats any inference of a causal connection.  *See Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases).

Here, the Court cannot discern a causal connection between the Related Lawsuits and Westhampton's adverse actions.  Initially, there is no direct evidence of retaliatory animus.  For instance, Plaintiffs do not allege that Westhampton threatened them or made comments indicating that it had retaliatory motive.  *See Russell v. Aid to Developmentally Disabled, Inc.*, 416 F. Supp. 3d 225, 235 (E.D.N.Y. 2017), *aff'd*, 753 F. App'x 9 (2d Cir. 2018) (noting that threats or comments indicating retaliatory motive are examples of direct evidence of retaliatory animus) (citations omitted).  As for circumstantial evidence, Plaintiffs fail to allege any temporal connection between the Related Lawsuits—the earliest of which was commenced in August 13, 2015, *see* Related Case No. 15-cv-4743—and the alleged retaliation against A.K., for which Plaintiffs provide no dates or context.  To the extent that the above adverse actions occurred in the 2018-2019 academic year, which is the subject

of the instant lawsuit, a three-year gap between the commencement of the Related Lawsuits and Westhampton's actions renders the inference of a causal connection untenable.    Moreover, Plaintiffs allege that the Related Lawsuits challenged Westhampton's "historic and discriminatory 'practice and/or policy' of reflexively outsourcing the post-elementary education of every single 'alternately assessed special education child' that has ever come before it."  Compl. ¶ 40.  This allegation of discriminatory practices that preceded the Related Lawsuits significantly undermines Plaintiffs' claim that Westhampton's adverse actions toward A.K. was in retaliation for the Related Lawsuits.

In light of Plaintiffs' failure to plead a causal connection between the Related Lawsuits and Westhampton's adverse actions, the Court respectfully recommends granting Defendants' motion for judgment on the pleadings with respect to Plaintiffs' retaliation claim and dismissing this claim without prejudice.

c.  <u>Individual Liability</u>

Plaintiffs' attempt to hold the Individual Defendants liable under the Acts is also misguided.[11]  As an initial matter, as discussed above, Plaintiffs fail to state a plausible claim for relief under either the ADA or the Rehabilitation Act.  Moreover, neither the ADA nor the Rehabilitation Act provide for individual liability.  *See A.K.*, 2019 WL 4736969, at *16 (citations omitted); *see also Givens v. City of N.Y.*, No. 11-cv-2568, 2012 WL 75027, at *4 (S.D.N.Y. Jan. 10, 2012) (stating that discrimination, including failure to accommodate and retaliation claims under the ADA, are not

---

[11] The Complaint does not raise any allegations against the Individual Defendants.  *See generally* Compl.

enforceable against individuals).  Accordingly, the Court respectfully recommends dismissing with prejudice Plaintiffs' ADA and Rehabilitation Act claims against the Individual Defendants.

ii.   *42 U.S.C. § 1983*

Plaintiffs further assert Section 1983 claims based on Defendants' alleged IDEA violations, ADA and Rehabilitation Act violations and deprivations of A.K.'s rights to equal protection and due process under the Fourteenth Amendment.  *See* Compl. ¶¶ 46-50.  As discussed below, Plaintiffs fail to state a claim upon which relief can be granted with respect to each of these Section 1983 claims.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a mechanism for enforcing a right or benefit established elsewhere." *Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citation omitted).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate:  "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983).

a. Section 1983 Claim Based on IDEA Violations

A plaintiff simultaneously asserting an IDEA claim and a Section 1983 claim must "prove that a constitutional violation occurred outside the scope of the IDEA." *A.K.*, 2019 WL 4736969, at *16 (internal quotation marks and citations omitted). Thus, a plaintiff may not rely on Section 1983 to pursue damages for violations of the IDEA, "absent allegations that they were denied IDEA's procedural safeguards or administrative remedies." *Id.* (internal quotation marks and citation omitted).

As set forth above, Plaintiffs availed themselves of the IDEA's remedial procedures through hearings before IHO Murphy and SRO Harrington. Thus, they "cannot now reiterate their IDEA claims in an effort to obtain monetary damages under Section 1983." *Id.* Accordingly, the Court respectfully recommends that Plaintiffs' Section 1983 claim based on Defendants' purported IDEA violations be dismissed with prejudice, as it fails to state a claim for which relief can be granted.

b. Section 1983 Claims Based on ADA and Rehabilitation Act Violations

Plaintiffs' Section 1983 claims based on the Acts must also be dismissed. "Freedom from discrimination on the basis of disability is a right secured by statute . . . not by the Constitution." *Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 281 (E.D.N.Y. 2014) (citations omitted). Thus, even if Plaintiffs had alleged violations of the ADA and the Rehabilitation Act—which, as discussed above, they did not—such violations are not actionable under Section 1983. *See id.* (dismissing Section 1983 claim based "purely on rights secured by the ADA[]"); *Freeman v. Rochester Psychiatric Ctr.*, No. 16-cv-06668, 2018 WL 4519879, at *6 (W.D.N.Y. Sept. 21, 2018)

(finding that plaintiff could not maintain Section 1983 action based only on rights created by Rehabilitation Act) (citation omitted).  The Court therefore respectfully recommends that Plaintiffs' Section 1983 claims based on violations of the Acts be dismissed with prejudice.

### c.  Fourteenth Amendment-Based Section 1983 Claims

Finally, Plaintiffs assert Section 1983 claims based upon A.K.'s Fourteenth Amendment rights to equal protection and due process.  *See* Compl. ¶ 48.

Pursuant to the Fourteenth Amendment's Equal Protection Clause, the Government must treat "all similarly situated people alike."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citation omitted).  The protections afforded by the Equal Protection Clause extend to "individuals who allege no specific class membership[,]" known as "class of one claims[,]" "where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Id.* (internal quotation marks and citations omitted).  To prevail on a "class of one" claim, a plaintiff "must point to at least one other individual whose circumstances, aside from being treated more favorably than plaintiff, are *prima facie* identical in all other respects."  *MB v. Islip Sch. Dist.*, No. 14-cv-4670, 2015 WL 3756875, at *9 (E.D.N.Y. June 16, 2015) (internal quotation marks and citations omitted).

Here, Plaintiffs have failed to plausibly allege that A.K. was treated differently from any similarly situated individual.  Plaintiffs allege that A.K. "remains part of a larger class of 'alternatively assessed special education children[,]'" but was "treated

in a particularly unique discriminatory fashion[.]"  Compl. ¶ 50.  Yet, they fail to allege how A.K. was treated differently from any child whose circumstances are otherwise "*prima facie* identical" to his own.[12]  Accordingly, the Court respectfully recommends that Plaintiffs' equal protection claim be dismissed without prejudice.  *See Camac v. Long Beach City Sch. Dist.*, No. 09-cv-5309, 2011 WL 3030345, at *16 (E.D.N.Y. July 22, 2011) (dismissing equal protection claim where complaint failed to allege how "another person's circumstances [were] *prima facie* identical" to plaintiff's circumstances); *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (granting motion to dismiss equal protection claim where plaintiff failed to "identify any comparators or similarly situated entities at all[]").

Plaintiffs' due process claims similarly fail.  Plaintiffs allege simply that they are "entitled to the constitutional protections of due process."  Compl. ¶ 48.  "The Fourteenth Amendment does not protect a public education as a substantive fundamental right."  *Handberry v. Thompson*, 446 F.3d 335, 352-53 (2d Cir. 2006) (citations omitted).  Accordingly, the Court respectfully recommends that Plaintiffs' due process claim be dismissed with prejudice for failure to show that Defendants have deprived them of a constitutionally protected interest.

---

[12] In their opposition to the instant motion, Plaintiffs name five special education students—Liam Cosgrove, Connor Cosgrove, William Hauser, Jack Libuti and Hunter Rignola—who they claim are similarly situated to A.K., although they do not explain how.  *See* Pl. Opp., 19.  Simply naming students in opposition to a motion to dismiss, however, does not compensate for Plaintiffs' failure to plausibly allege in the Complaint that at least one other student whose circumstances are *prima facie* identical to those of A.K. was treated differently than A.K.

### iii.  Equitable Relief

Finally, Plaintiffs seek an "order directing . . . [D]efendants to employ [their] special education resources towards addressing the unique and individualized needs of . . . A.K." WHEREFORE Clause.

To the extent that Plaintiffs' request is one for a preliminary injunction, their claim must fail.  A party seeking an "injunction that alters the status quo by commanding a positive act" must demonstrate irreparable harm and a likelihood of success on the merits.  *See D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006), *opinion amended on denial of reh'g*, 480 F.3d 138 (2d Cir. 2007) (internal quotation marks and citation omitted).  Plaintiffs fail to allege a likelihood of success on the merits.  On the contrary, as set forth above, despite Plaintiffs' due process complaints, the IHO and SRO have not found that Westhampton is required to create a program to educate A.K.

Plaintiffs contend that they are "*not* seeking injunctive relief, but *rather* a final equitable remedy that will compel . . . [Westhampton] to employ its special education resources towards addressing" A.K.'s needs.  *See* Pl. Opp. 25 (emphasis in original). Plaintiffs fail to offer any legal authority to support their claim that they are entitled to such relief, and the Court has been unable to find any such authority.

Accordingly, the Court respectfully recommends that Plaintiffs' request for equitable relief be dismissed without prejudice.

## IV.  CONCLUSION

For the reasons set forth above, the Court respectfully recommends denying Defendants' motion to dismiss for lack of subject matter jurisdiction and granting

Defendants' motion for judgment on the pleadings with respect to Plaintiffs' claims under the ADA, Rehabilitation Act and Section 1983. Specifically, the Court recommends dismissing without prejudice Plaintiffs' ADA and Rehabilitation Act claims against Westhampton and Plaintiffs' request for equitable relief, and further dismissing with prejudice Plaintiffs' ADA and Rehabilitation Act claims against the Individual Defendants and Plaintiffs' Section 1983 claim against all Defendants.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below. Defendants are directed to serve a copy of it on Plaintiffs via first-class mail and file proof of service by ECF within three days of the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            June 24, 2020              /s/ Steven I. Locke
                                       STEVEN I. LOCKE
                                       United States Magistrate Judge